IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARMING SHOPPES INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | No: 08-1156 |
| CRESCENDO PARTNERS II, | : | |
| L.P., et al., | : | |
| Defendants. | : | |

May 2, 2008                                                                                         Anita B. Brody, J.

**EXPLANATION AND ORDER**

**I. INTRODUCTION**

    Plaintiff Charming Shoppes Inc. ("Charming Shoppes") brings suit against Defendants Crescendo Partners II, L.P., Crescendo Investments II, LLC, Crescendo Partners III, L.P., Crescendo Investments III, LLC, Myca Partners, Inc., Myca Master Fund, LTD., Arnaud Ajdler, Eric Rosenfeld, and Robert Frankfurt (collectively referring to all defendants as the "Crescendo Defendants") alleging violations of Sections 13(d) and 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78m(d) and 78n(a), and Section 8 of the Clayton Act, 15 U.S.C. § 19.

    Charming Shoppes is a specialty apparel retailer with a leading market share in women's

plus-size apparel.  Charming Shoppes' brands include Lane Bryant, Fashion Bug, Catherine's Plus Size, Petite Sophisticate, and Crosstown Traders, Inc.  The Crescendo Defendants are comprised of investment firms that own Charming Shoppes stock and a few of the individual directors and officers from these firms.

Charming Shoppes and the Crescendo Defendants are currently engaged in a proxy contest.  Three of the eight members of Charming Shoppes' board of directors are up for election in a shareholder vote scheduled to take place at the 2008 Annual Meeting on May 8, 2008.  The Crescendo Defendants have nominated a slate of three directors (individual defendants Arnaud Ajdler and Robert Frankfurt, and a third nominee Michael Appel) to challenge the reelection of Charming Shoppes' incumbents.

Currently before me is Charming Shoppes' motion for a preliminary injunction. Charming Shoppes seeks to: (1) enjoin the Crescendo Defendants from continuing to violate Sections 13(d) and 14(a) of the Exchange Act; (2) require the Crescendo Defendants to correct their Schedule 13D and proxy materials by making the necessary disclosures; and (3) enjoin the Crescendo Defendants' nominees from running for election pursuant to Section 8 of the Clayton Act.

After expedited discovery and briefing by the parties, I held a preliminary injunction hearing on April 24, 2008.  Based on the parties' filings and the evidence presented at the hearing, I deny Charming Shoppes' motion for a preliminary injunction.

## II.  LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

A district court may grant a preliminary injunction only if: "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the

injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). This extraordinary remedy is only appropriate if the plaintiff can establish every element in its favor. *P.C. Yonkers, Inc. v. Celebrations the Party Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). As explained below, Charming Shoppes has failed to meet its burden of proof that it is likely to succeed on the merits.[1]

### III. SECTION 13(d) OF THE EXCHANGE ACT

Section 13(d) of the Exchange Act requires that any person or group which directly or indirectly becomes the beneficial owner of more than 5% of any registered equity security must file certain disclosures within ten days. 15 U.S.C. § 78m(d). "This section was designed to alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control." *IBS Financial Corp. v. Seidman & Assocs.*, 136 F.3d 940, 945-46 (3d Cir. 1998) (internal quotations and citations omitted). There are several SEC regulations designed to implement Section 13(d). 17 C.F.R. §§ 240.13d-1 to -6. Additionally, the SEC requires parties to file a Schedule 13D, a form that lists the specific disclosures that must be made.[2] 17 C.F.R. § 240.13d-101.

Charming Shoppes alleges that the Crescendo Defendants' Amended Schedule 13D filed

---

[1] Because I find that Charming Shoppes is not likely to succeed on the merits, I do not examine whether Charming Shoppes can establish the remaining preliminary injunction elements.

[2] The following is a list of some of the disclosures required on the Schedule 13D: (1) the identity of all group members; (2) any plan or proposal which relate to or would result in a sale or transfer of a material amount of assets; and (3) any plan or proposal which relate to or would result in a material change in the corporate structure.

on January 15, 2008 is false and misleading.[3]  Charming Shoppes contends that the Crescendo Defendants failed to disclose the following required facts in their Amended Schedule 13D: (1) that Ramius Capital Group LLC ("Ramius") and Stadium Capital Management LLC ("Stadium") are part of a group with Crescendo and Myca for purposes of Section 13(d); (2) their plan to sell Charming Shoppes' assets and use the cash to buy back stock; (3) their plan to replace Dorrit Bern ("Bern"), the CEO of Charming Shoppes; and (4) their plan to employ Michael Appel ("Appel") as Chief Restructuring Officer of Charming Shoppes.[4]

1.  The Status of Ramius and Stadium as Part of a Group with the Crescendo Defendants

The Crescendo Defendants' first alleged omission on their Amended Schedule 13D is their failure to include Ramius and Stadium as part of their group.[5]  According to Section 13(d), two or more persons constitute a group when they "agree to act together for the purposes of acquiring, holding, voting or disposing of equities securities of an issuer." 17 C.F.R. § 240.13d-5(b)(1).  "Thus, 'the touchstone of a group within the meaning of Section 13(d) is that the

---

[3] Charming Shoppes also alleges that the Crescendo Defendants' Initial Schedule 13D filed on January 8, 2008 is false and misleading.  Because the purpose of Section 13(d) is full disclosure which can be achieved through amendments to a party's Schedule 13D, I do not examine whether there are false or misleading statements in the Initial Schedule 13D.  It is inappropriate to grant preliminary injunctive relief for any omissions or inaccuracies that are later corrected in an Amended Schedule 13D.  *See Treadway Companies, Inc. v. Care Corp.*, 638 F.2d 357, 380 (2d Cir. 1980); *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 715 (5th Cir. 1984).

[4] On March 14, 2008 and March 21, 2008, the Crescendo Defendants filed additional amendments to their Schedule 13D.  However, these additional amendments do not address or attempt to correct the alleged omissions of the Crescendo Defendants.

[5] In their Amended Schedule 13D, the Crescendo Defendants disclose that Crescendo and Myca are part of a group for the purpose of seeking representation on Charming Shoppes' Board of Directors.

members combined in furtherance of a common objective.'" *Roth v. Jennings*, 489 F.3d 499, 508 (2d Cir. 2007) (quoting *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982)).  An agreement to act together as a group "may be formal or informal and may be proved by direct or circumstantial evidence." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 124 (2d Cir. 2001). Whether two or more persons constitute a group for purposes of Section 13(d) is a question of fact.  *Roth*, 489 F.3d at 508.

     Charming Shoppes presents scarce evidence to support its contention that Ramius and Stadium formed a group with the Crescendo Defendants.  The only evidence Charming Shoppes supplies to prove that Stadium was part of the group is a single email that refers to a conversation between Robert Frankfurt ("Frankfurt"), President of Myca, and Stadium in which Stadium agreed that it was displeased with Charming Shoppes' incumbent management.

     As proof of  Ramius' alleged membership in the group, Charming Shoppes produces one email conversation between Frankfurt and Ramius and a fee agreement between Myca and Ramius that was disclosed in the Amended Schedule 13D.[6]  Although Charming Shoppes argues that this agreement demonstrates that Ramius is a part of the Crescendo Defendants' group, the agreement specifically states that Ramius has "decided that it will not work with Myca regarding [Charming Shoppes] and each party will make its own independent investments, voting and disposition decisions."  (Amended Schedule 13D filed January 15, 2008, exhibit 99.3).

     Based on the dearth of evidence presented by Charming Shoppes, I find that there is insufficient evidence to prove that Ramius and Stadium formed a group with the Crescendo

---

[6] The agreement between Myca and Ramius provided Myca with a portion of the profits that Ramius might make if it decided to purchase Charming Shoppes stock.

Defendants to prove that Charming Shoppes is likely to prevail on this point. Hence, the Crescendo Defendants were not required to make any disclosure regarding Stadium or Ramius on their Schedule 13D.

2. The Crescendo Defendants' Plan to Sell Off Assets to Buy Back Stock

The Crescendo Defendants' second alleged omission on their Amended Schedule 13D is their failure to alert shareholders of their plan to sell off Charming Shoppes assets, specifically Charming Shoppes' real estate, credit card operations, and catalog business, and their plan to use the cash from the sale of assets to buy back shares. Although Charming Shoppes accuses the Crescendo Defendants of hiding their plan, the Amended Schedule 13D demonstrates that the Crescendo Defendants disclosed this information. In a letter, attached to the Amended Schedule 13D, the Crescendo Defendants disclose their intention, if elected, to "[e]xplor[e] the sale of non-core assets (i.e., real estate, credit card operations, catalog business) in order to simplify the business and focus management on improving its underperforming retail options" and "[b]uy[] back a significant amount of shares with cash flow from operations and cash raised through asset sales." (Amended Schedule 13D filed January 15, 2008, exhibit 99.2).

Based on the information provided in the Amended Schedule 13D, I find that the Crescendo Defendants disclosed their plan. Hence, no additional disclosures regarding this issue are necessary.

3. The Crescendo Defendants' Plan to Replace Charming Shoppes' CEO, Dorrit Bern

The Crescendo Defendants' third alleged omission on their Amended Schedule 13D is their failure to disclose their plan to replace Bern, the CEO of Charming Shoppes. As evidence of the Crescendo Defendants' plan to replace Bern, Charming Shoppes provides a few emails

from Frankfurt that refer to his displeasure with Bern as a CEO. In these emails, Frankfurt discusses potential candidates for CEO and his search for a "horse to run with." (Plaintiff's Exhibit 29). However, these emails were sent in October, 2007, before Crescendo formed a group with Myca for the purpose of electing a slate of nominees to the Board. Additionally, these emails were sent before Bern accepted a new three-year employment contract with Charming Shoppes that, if terminated, could cost Charming Shoppes more than $10.5 million.

The single piece of evidence produced by Charming Shoppes' that post-dates the Crescendo Defendants' decision to form a group and Bern's new employment contract is the Declaration of Raphael Benaroya ("Benaroya"), the former CEO of United Retail Group. Benaroya states that Arnaud Ajdler ("Ajdler"), the managing director of Crescendo, approached him on April 7, 2008 and asked him if he "was precluded from serving as the CEO of Charming Shoppes if [Ajdler] and Crescendo's other nominees became directors and caused the Company to replace Ms. Bern as CEO." (Benaroya Declaration p.2). Although Ajdler asked whether Benaroya was precluded from serving as CEO, he never told Benaroya that the Crescendo Defendants had a specific plan to get rid of Bern. As Ajdler states in his declaration, "I did not advise Mr. Benaroya, however, that I had any specific plan to fire Ms. Bern, or that I had any intention to hire him because I have no such plans. The purpose for my inquiry was simply to better evaluate the options available to Charming, in the event that its Board were to ultimately determine that Ms. Bern were unfit to serve." (Ajdler Declaration p.9-10). Furthermore, Frankfurt states in his declaration, "I have no plan to terminate Dorrit Bern as the Chief Executive Officer of Charming, and I am not aware of any such plan on the part of Crescendo." (Frankfurt Declaration p.8). Lastly, there is no mention of any plan to replace Bern in an email

sent from Frankfurt to Michael Appel ("Appel") and Ajdler on February 5, 2008 that outlined their fifty-day game plan if they were elected to the Board.

I find that Charming Shoppes' failed to establish by a preponderance of the evidence that the Crescendo Defendants had a specific plan to replace Bern. Hence, no further disclosure is necessary on the subject.

4. <u>The Crescendo Defendants' Plan to Hire Michael Appel as Charming Shoppes' Chief Restructuring Officer</u>

The Crescendo Defendants' fourth alleged omission on their Amended Schedule 13D is their failure to reveal their plan to hire Appel as the Chief Restructuring Officer of Charming Shoppes. Charming Shoppes points to an Action Plan created December 12, 2007 for a meeting between Crescendo and Myca that lists as one of the bullet points "Michael Appel - Chief Restructuring Officer." (Plaintiff's Exhibit 1, p.1). Additionally, Charming Shoppes refers to an email sent by Frankfurt to Appel on November 21, 2007 in which it lists as an item, "Michael to be named Chief Restructuring Officer." (Plaintiff's Exhibit 32). While these two documents appear to suggest that the Crescendo Defendants planned to make Appel the Chief Restructuring Officer, they were written before the Crescendo Defendants' formed a group and more than a month before their filing of an Initial Schedule 13D.

Although hiring Appel was an initial suggestion, the Crescendo Defendants never adopted a plan to hire Appel as Chief Restructuring Officer. Appel makes this clear in his declaration when he states that "I have not been offered a job as Chief Restructuring Officer at Charming by any person. I know of no plan to ask Charming to hire me, or anyone else, for such a post." (Declaration of Appel, p.3). Additionally, there is no mention of hiring Appel as Chief

Restructuring Officer in the fifty-day game plan designed by Frankfurt, Appel, and Ajdler on February 5, 2008.

I find that Charming Shoppes failed to establish by a preponderance of the evidence that the Crescendo Defendants had a specific plan to hire Appel as Chief Restructuring Officer. Hence, no additional disclosure is necessary regarding this issue.

## IV.  SECTION 14(a) OF THE EXCHANGE ACT

According to the United States Supreme Court, Section 14(a) of the Exchange Act "was intended to promote the free exercise of voting rights of stockholders[] by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his votes is sought." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 381 (1970) (internal quotations omitted).  The "broad remedial purpose" of Section 14(a) is "to ensure disclosures by corporate management in order to enable the shareholders to make an informed choice." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976).

Section 14(a) of the Exchange Act makes it "unlawful for any person . . . in contravention of such rules and regulations as the [SEC] may prescribe . . . to solicit any proxy or consent or authorization in respect of any security . . . ." 15 U.S.C. § 78n(a).  Pursuant to Section 14(a), the SEC promulgated Rule 14a-9, which provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . .

17 C.F.R. § 240.14a-9.  A fact is material "if there is a substantial likelihood that a reasonable

9

shareholder would consider it important in deciding how to vote." *TSC Indus.*, 426 U.S. at 449. A plaintiff asserting a material omission must demonstrate that there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id*. "Although the underlying philosophy of federal securities regulations is that of full disclosure, there is no duty to disclose information to one who reasonably should already be aware of it." *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (internal quotations omitted). Thus, underlying "the policy behind the 'total mix' approach" is the conviction that "the purpose of looking at the sum of all information reasonably available is to enable a registrant to rely on a reasonable belief that the other party already has access to the facts [to] excuse him from new disclosures which reasonably appear to be repetitive." *Koppel v. 4987 Corp.*, 167 F.3d 125, 132 (2d Cir. 1999) (internal quotations omitted).

Charming Shoppes alleges that the Crescendo Defendants' definitive proxy filed on April 4, 2008 contained false and misleading statements of material facts and omitted material facts. Charming Shoppes contends that in their definitive proxy, the Crescendo Defendants failed to accurately disclose or failed entirely to disclose the following material facts: (1) their plan to replace Bern, the CEO of Charming Shoppes; (2) their plan to employ Appel as Chief Restructuring Officer of Charming Shoppes; (3) their fee arrangement with Ramius; (4) their plan to sell Charming Shoppes' assets and use the cash to buy back stock; (5) their track record of abusing the proxy process; (6) that provisions of the Bank Control Act may preclude them from voting any proxies; and (7) that the nominees may not be able to serve as directors because Ajdler sits on the Board of Mothers Work, which may violate Section 8 of the Clayton Act.

I do not determine whether any of the Crescendo Defendants' alleged omissions was material because I find that there are sufficient reasons to deny Charming Shoppes' motion for preliminary injunction as to Section 14(a) without reaching this issue. Because, as discussed above, Charming Shoppes produced insufficient evidence to establish that the Crescendo Defendants had a plan either to replace Bern or to hire Appel as Chief Restructuring Officer, the Crescendo Defendants were not required to disclose these items in their proxy. Although Charming Shoppes' argues that the Crescendo Defendants' fee agreement with Ramius was not accurately disclosed in their proxy, Charming Shoppes offers no evidence to support this contention. Because the Crescendo Defendants adequately disclose their fee arrangement with Ramius in their proxy, I do not require them to make any further disclosure.

As to the remaining four facts that Charming Shoppes contends that the Crescendo Defendants must disclose, I find that given the "total mix" of information made available to stockholders no further disclosures are required. As the United States Supreme Court has repeatedly emphasized in both *Mills* and *TSC Indus.*, the purpose of Section 14(a) is to ensure that shareholders make informed decisions. In their definitive proxy, the Crescendo Defendants disclosed that Charming Shoppes initiated this litigation against them and they discussed each of the four facts that are allegedly omitted from their proxy. Additionally, the Crescendo Defendants disclosed that a preliminary injunction hearing would take place on April 24, 2008. Furthermore, Charming Shoppes also disclosed the details of this litigation and their allegations against the Crescendo Defendants in several of their solicitation materials filed with the SEC.

Between Charming Shoppes' efforts to inform its shareholders of its allegations against the Crescendo Defendants and their own decision to reveal the contents of the on-going

litigation, the "total mix" of information available is sufficient for shareholders to make informed decisions on the make-up of the Board. There is no reason to require the Crescendo Defendants amend their proxy at this point - the disputed information is already available to shareholders through the parties' SEC filings and the preliminary injunction hearing that was open to the public. In addition, on May 1, 2008, I held that a number of the documents received into evidence at the hearing are publicly available. This adds to the picture of the quality of the "total mix" of information available to shareholders. Therefore, I deny Charming Shoppes' motion for preliminary injunction as to Section 14(a).

## V.  SECTION 8 OF THE CLAYTON ACT

Charming Shoppes seeks preliminary injunctive relief for the Crescendo Defendants' alleged violation of Section 8 of the Clayton Act. Section 8 of the Clayton Act prohibits interlocking directorates between corporations that are competitors. 15 U.S.C. § 19. Section 16 of the Clayton Act provides the authority for private parties to seek injunctive relief for violation of Section 8 of the Clayton Act. 15 U.S.C. § 26. According to Section 16:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18 and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue . . . .

15 U.S.C. § 26. As held by the United States Supreme Court, "a plaintiff seeking relief under Section 16 of the Clayton Act must show a threat of antitrust injury." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 122 (1986). Antitrust injury is "injury of the type the antitrust

12

laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

To merit injunctive relief, a plaintiff must demonstrate that it will experience "a significant threat of injury from an impending violation of the antitrust laws." *City of Pittsburgh v. West Penn Power Comp.*, 147 F.3d 256, 264-65 (3d Cir. 1998) (internal quotations omitted). Implicit in this requirement is the understanding that "[t]he antitrust laws . . . were enacted for 'the protection of *competition* not *competitors*.'" *Cargill*, 479 U.S. at 492 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)) (emphasis in original). Whether a plaintiff has demonstrated a threat of antitrust injury is a threshold inquiry. *See City of Pittsburgh*, 147 F.3d at 264. "If antitrust injury is not found, further inquiry is unnecessary." *Id.* at 265.

Charming Shoppes alleges that because Ajdler is a current board member of Mothers Work, a maternity clothing retailer, the election of the Cresecendo Defendants' nominees to the Charming Shoppes' Board would create interlocking directorates that are prohibited by Section 8 of Clayton Act. If this were to occur, Charming Shoppes believes that it would be irreparably harmed. Specifically, Charming Shoppes argues that the threatened injury it faces from these interlocking directorates is the disclosure of Charming Shoppes' trade secrets to Mothers Work. While this may cause injury to Charming Shoppes, it is not "the type of injury that antitrust laws were intended to prevent," *Brunswick*, 429 U.S. at 489, because the revealing of trade secrets does not hinder competition in the retail clothing market.

As stated in *Cargill*, "[t]he antitrust laws . . . were enacted for the 'the protection of *competition* not *competitors*." 479 U.S. at 492. Because Charming Shoppes and the Crescendo Defendants are competitors in a highly disputed proxy contest, Charming Shoppes seeks to use

13

Section 8 of the Clayton Act to enjoin the Crescendo Defendants from running their slate of Board nominees. However, Section 8 was not created as vehicle for courts to sit in judgment of competitors in a proxy contest. Charming Shoppes has failed to allege or prove that it will suffer any antitrust injury from the interlocking of the board of directors of Charming Shoppes and Mothers Work. Therefore, I deny Charming Shoppes' motion for preliminary injunction as to Section 8 of the Clayton Act.[7]

---

[7] I need not explore whether the election of the Crescendo Defendants to the Charming Shoppes Board would substantively violate Section 8 because Charming Shoppes has neither alleged nor proven antitrust injury.

**<u>ORDER</u>**

**AND NOW**, this _2nd____ day of ___May_____, 2008, it is **ORDERED** that Plaintiff Charming Shoppes' Amended Motion for a Preliminary Injunction (Doc #48) is **DENIED** as stated on the record during the telephone conference held on May 1, 2008.

                                          s/Anita B. Brody

                                          ANITA B. BRODY, J.

Copies **VIA ECF** on            to:                    Copies **MAILED** on            to: